UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| ANGELA S. HEISHMAN a/k/a | * | |
| ANGELA S. BEASTON, | * | |
|     Debtor | * | |
| | * | Case No. 1-04-03001 |
| OFFICE OF THE UNITED | * | |
| STATES TRUSTEE, | * | |
|     Movant | * | |
| | * | CHAPTER 7 |
| v. | * | |
| | * | |
| ANGELA S. HEISHMAN a/k/a | * | |
| ANGELA S. BEASTON, | * | |
|     Respondent | * | |
| | * | |

**OPINION**

Procedural and Factual History

This matter is before the Court on the Motion of the United States Trustee ("UST") to dismiss the within case under 11 U.S.C. §707(b). The UST asserts that the case should be dismissed because the debts listed in Debtor's schedules are primarily consumer debts and granting a discharge would constitute a substantial abuse of the Chapter 7 process. I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (J).[1] On October 25, 2004, a hearing was held on the Motion at which time Debtor appeared and testified. The matter is now ready for decision.

---

[1] This Memorandum Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

**Factual Findings**

Debtor is married and currently employed as a school psychologist in the Big Spring School District, Cumberland County, Pennsylvania. Her current gross monthly income from employment as a school psychologist is $3,253.00. She also is employed part-time by the Cumberland/Perry Association for Retarded Citizens, (CPARC) from which she receives net monthly income of $837.00. At the time of the hearing, Debtor's net monthly income was reported at $2,861.78.[2] Debtor also testified that she soon will be terminated from her part time employment with CPARC. Debtor's husband, who did not file for relief, has been employed by the United States Department of Defense for twenty years. His gross monthly income at the time of the petition was $4,337.00 and his net monthly income was $2,976.00. Therefore, the joint household net income as reported in Schedule I was $5,837.78. On Schedule J, Debtor stated she and her husband had monthly expenses of $6,011.00.

The genesis of Debtor's financial woes was her participation in the financing of her husband's business, a coffee shop in Carlisle, Pennsylvania. In 2002 the business reported losses of over $112,000.00,[3] and in 2003 it reported losses of $33,000.00. Debtor testified that, at the time of the hearing, gross income from the coffee shop enabled the business to meet most of its monthly expenses. She further explained, however, that rent was in arrears and that she and her

---

[2] At the time the petition was filed, Debtor was working three jobs with a monthly net income of $2,952.00.

[3] In examining Debtor, The UST's attorney indicated that he was reading from Debtor's federal tax return (a joint one with her husband) and that it reflected a loss of $112,000.00. (Notes of Testimony p. 9) Later, however, The UST's attorney stated that the parties had stipulated that the loss was $114,000.00. (Notes of Testimony p. 72) Later still, Debtor's counsel represented that the loss was $112,000.00. (Notes of Testimony p. 81) The Court need not resolve this discrepancy for purposes of the instant decision.

husband were paying delinquent sales tax "out of their own pockets." Debtor estimated that the total amount of rent in arrears owed to the coffee shop's landlord was $18,000.00, not including potential contributions for utilities and leasehold improvement charges. Debtor admitted that both she and her husband used income from their employment and personal credit to help finance his business.

Debtor and her husband own a modest home valued on their schedules at $71,000. According to Schedule D, the home is encumbered by a purchase mortgage of $43,969.00 and a second mortgage of $8,495.00. Debtor testified that the second mortgage is a home equity loan that was incurred to provide financing for the coffee shop. Debtor was unable to estimate the amount of unsecured credit that was incurred to defray the expenses of coffee shop or that was used to provide necessities of daily living so that personal income could be diverted to the business. As of the date of filing the petition, Debtor had unsecured non-priority debt totaling $99,902.94. She estimated that her husband's credit card debt totaled ten to twelve thousand dollars and reported that the household currently was paying $300 toward his credit card debt. She further testified that for several years prior to the filing of her petition, her husband had been unable to obtain new credit. Therefore, Debtor was required to use her credit cards if joint expenses or expenses of the business needed to be paid with credit.

The UST asserts that to grant Debtor a discharge would be a substantial abuse of Chapter 7 because she has used her income to pay expenses of her husband's business while seeking to discharge her own unsecured debts. Further, the UST asserts that Debtor has under-reported her household income and has included in her expenses unnecessary items or necessary items in unreasonable amounts. The particular items objected to by the UST include: $187.00 per month

3

on a 403(b) loan from her former employer; amounts paid out of the household budget to provide supplies for the coffee shop in an estimated amount of $300 per month; and telephone, cable, internet and cell phone service in the amount of $320 per month

Debtor's husband currently is liable to the Pennsylvania Department of Revenue ("Revenue") for business taxes in the approximate amount of $6,000.00. Debtor's household budget includes $400.00 per month toward these taxes.[4] The only business expenses that were specifically included in household expenses on Debtor's Schedule J were the second mortgage and the monthly amount paid on the tax arrearage to Revenue. Based upon an analysis of the monthly payments and the balance of the second mortgage, the UST estimated that the loan should be satisfied in less than two years. Although not specified on Schedule J, Debtor testified that approximately $200 to $300 per month of the household food budget was used to purchase supplies for the coffee shop. No other business expenses were listed, nor was income from the business listed on Schedule I.

Prior to filing the instant petition, Debtor sought the assistance of a credit counseling agency, Solidium, to negotiate with their creditors and help them manage their debt. The efforts of Solidium apparently were unsuccessful.

## **Discussion**

Section 707(b) of the Bankruptcy Code provides as follows:

> [T]he court . . . may dismiss a [Chapter 7] case . . . if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a

---

[4]When questioned about the basis for her liability for unpaid Pennsylvania sales tax, Debtor testified that she signed sales tax returns for the business as a manager. She further testified that Revenue had a lien on her residence, but Revenue was not listed as a secured creditor in her schedules.

4

presumption in favor of granting the relief requested by the debtor.
11 U.S.C. §707(b).

The Bankruptcy Code does not define the term "substantial abuse." Neither the Supreme Court nor the Third Circuit Court of Appeals has addressed the concept of "substantial abuse." In *In re Miller,* 302 B.R. 495 (Bankr. M.D. Pa. 2003), I discussed the various Circuit opinions on the meaning of the term and adopted the "hybrid" approach followed by the Sixth Circuit in *In re Krohn*, 886 F.2d 123 (6th Cir. 1988). The Sixth Circuit has determined that substantial abuse can be based upon either a debtor's lack of honesty or his lack of need for Chapter 7 relief. *Krohn*, 886 F.2d at 126.

Both the Sixth Circuit in *Krohn* and the Fourth Circuit in *In re Green*, 934 F.2d 568 (4th Cir. 1991) have suggested that certain factors be considered when applying the totality of the circumstances test. The Fourth Circuit includes the following factors in its analysis:

> (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
> (2) whether debtor made consumer purchases far in excess of his ability to repay;
> (3) whether debtor's proposed family budget is excessive or unreasonable;
> (4) whether debtor's schedules and statements of current income and expenditures reasonably and accurately reflect debtor's true financial condition; and
> (5) whether the bankruptcy petition was filed in bad faith.

*Green,* 934 F.2d at 572 . In addition, this Court also has applied similar factors cited in *Krohn*:

> debtor's good faith and candor in filing schedules and other documents, whether [a debtor] has engaged in 'eve of bankruptcy purchases,' whether he was forced into bankruptcy by unforeseen or catastrophic events . . . . his ability to repay debts out of future earnings . . . . whether [he] enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

5

*Krohn*, 886 F.2d at 126.

Unlike *Green, Krohn* holds that a case may be dismissed solely because the debtor has the means to repay his debts. But dismissal is not mandated on this factor alone. *Krohn,* 886 F.2d at 127. Similarly, in *Miller* I indicated that this Court would not automatically dismiss a case solely because a debtor's monthly income exceeded his expenses, but would consider whether a debtor can repay to unsecured creditors either: (1) a significant *percentage* of his total unsecured debt, or (2) a significant *amount* of money regardless of the percentage payout. *Miller*, 302 B.R. at 500. By considering both the percentage and the total amount of unsecured debt that can be repaid, the court neither penalizes debtors who avoid amassing significant debt immediately prior to filing nor rewards those who do.

Under the "hybrid" approach to the totality of the circumstances test, a court should first determine whether Chapter 7 relief is needed by focusing on whether a debtor is able to pay a significant percentage of his unsecured debt or a significant amount of money from future income through a Chapter 13 plan. *Krohn*, 886 F.2d at 126; *In re Duncan*, 201 B.R. 889 (W.D. Pa. 1996). The combined net monthly income for Debtor and her husband at the time of the hearing was $5,837.78. However, Debtor will soon be terminated from her part time position with CPARC so her income will be reduced by $837.00 per month, thus reducing the net household income to $5,000.78. After calculating net household income, I must determine "whether [Debtor's] expenses can be reduced significantly without depriving [her] of adequate food, clothing, shelter and other necessities." *Krohn*, 886 F.2d at 127.

I agree with the UST that repaying the 403(b)loan to her former employer is not a necessary expense. Although preservation of her interest in her retirement account would be

6

prudent under other circumstances, Debtor should be repaying her creditors rather making elective payments for her future needs. I also agree that while Debtor's spouse may elect to subsidize the negative cash flow of his business, Debtor's creditors should not be asked to support his future entrepreneurial endeavors. Further, I agree with the UST that Debtor's food expense is somewhat high at $900 per month. Debtor explained that she and her husband had certain special nutritional needs and did not prepare their own meals due to their work schedules, which may justify a higher than average expense. However, Debtor also testified that approximately $200 to $300 per month of the food expense was incurred to provide supplies for the coffee shop. I find that the food expense is excessive and should be reduced by $300 per month. The UST also asserts that Debtor's monthly expenses for telephone, cable, internet access and cell phones of $320 per month is excessive. Although this expense may be high, Debtor demonstrated the necessity for these services in a reasonable amount. I will allow these expenses in an amount of $220 per month. Debtor also claimed $400 per month in "misc. college expenses/memberships."[5] Although Debtor testified about the numerous associations of which she was a member and her continuing education expenses, no testimony about specific amounts were elicited. I find that the UST failed to show that these "miscellaneous" expenses claimed by Debtor were unnecessary or unreasonable.

Therefore, after reducing Debtor's household budget for future monthly expenditures for food, repayment of the 403(b) loan, and for phone and computer related expenses in a total amount of $587.00, Debtor will have allowable household expenses of $5,424.00. If Debtor's

---

[5] Debtor's Schedule J listed "misc. college expenses/memberships" in a monthly amount of $500. At the hearing, the UST stated that this expense was $400 which was not disputed by Debtor.

household income were to remain at the level existing at the date of the hearing, Debtor would have disposable income of approximately $413.00. However, Debtor testified that since she accepted a full time teaching position and reduced her work hours at CPARC to part time, she will lose her job once a full time replacement is located. Debtor's testimony on this issue was credible, therefore I find that she neither can repay a significant *percentage* of her total unsecured debt or a significant *amount* of money toward repayment of her unsecured debt.

Debtor's inability to repay her debts, however, is not dispositive of the issue of whether granting her a discharge would constitute substantial abuse of the bankruptcy process. A lack of honesty also may provide a basis for dismissal for substantial abuse. The Court can consider, *inter alia*, whether a debtor has made an effort to accurately report his financial condition, whether he has made "eve of bankruptcy purchases," and whether, generally, the petition has been filed in good faith.

Debtor's schedules and statements of current income and expenditures reasonably and accurately reflect her true financial condition.[6] Although she had difficulty distinguishing between personal expenses and those of her husband's business, I find that the deficiencies were attributable to the failure of Debtor and her husband to properly structure their personal and business interests rather than due to any effort to conceal their true financial situation.

---

[6]Although the schedules and statements are reasonably accurate for the purposes of this Motion, more complete information on the income and expenses attributable to the operation of the coffee shop would have assisted the Court's understanding of Debtor's financial situation. Debtor failed to list the Department of Revenue's trust fund tax claim as a secured debt although Debtor testified that she believed she was obligated on the debt and that Revenue had a lien against her home. This omission was not explained. Debtor also included certain purchases for the coffee shop in the household food budget. The Court presumes that these expenses were included in the household food budget because she was unable to segregate purchases made for their household from purchases made for the business.

Debtor's petition was not filed because of sudden illness, calamity, disability or unemployment. It was filed mainly because Debtor and her husband used personal credit to subsidize the operations of her husband's coffee shop. But there is insufficient evidence that Debtor made consumer purchases far in excess of her ability to repay the debt in a knowing and calculated manner that would suggest bad faith. She and her husband have a modest home and older, high-mileage vehicles. Again, it appears that Debtor and her husband used net income that should have been designated to satisfy the expenses of operating their household to subsidize the coffee shop's operations in 2002 and 2003. Although perhaps in hindsight this was a poor decision, it does not lead to the conclusion that Debtor was dishonest in incurring the debt. Although subsidizing the business was the source of Debtor's financial difficulties, prior to filing she did make an effort to resolve her difficulties. Schedule F includes several non-dischargeable debts for student loans, a personal line of credit, fees for credit counseling and several credit cards balances. On most of the credit cards no charges were made within the year before the filing. Debtor also attempted to resolve her financial difficulties through credit counseling.

There is insufficient evidence to find that the petition was filed in bad faith. While the UST speculated at the hearing that Debtor's petition was conveniently timed to coincide with the business becoming profitable, the UST did not present sufficient evidence to carry its burden of proof on this assertion.

The UST has raised several well-founded concerns regarding Debtor's entitlement to relief. However, after considering all the evidence presented to the Court concludes that the UST has failed to bear its burden of proof that granting Debtor a Chapter 7 discharge would be a substantial abuse of the bankruptcy process. Therefore, the Motion to dismiss shall be denied.

9

An appropriate order will be entered.

BY THE COURT,

*Mary D. France*
Bankruptcy Judge

Date: January 20, 2005

*This electronic order is signed and filed on the same date.*